UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

GARY DEAR, individually and on
behalf of all others similarly situated,

     Plaintiff,

                                                **CLASS REPRESENTATION**

v.

Q CLUB HOTEL, LLC, a Delaware
Limited Liability Company,

     Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, GARY DEAR, ("Plaintiff") individually and on behalf those similarly situated, by and through his undersigned counsel, hereby sue Defendant, Q CLUB HOTEL, LLC ("Defendant" or "Q CLUB"), a Delaware Limited Liability Company, and allege:

## NATURE OF CASE

1.    Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure for damages, and for declaratory, injunctive, and supplemental relief.

2.    Plaintiff and Class Members are condominium owners of units in Defendant's Q Club Resort and Residence Condominium, part of which is dedicated to a hotel operating under the Hilton brand known as the "Hilton Fort Lauderdale Beach Resort."

3.    The condominium is governed by a uniform Declaration of Condominium whose terms apply to each Plaintiff and Class Member similarly and to Q CLUB whose duties under it apply to Plaintiff and Class Members uniformly.

4.     Under the Declaration, each Plaintiff and each Class Member is assessed a percentage of specifically defined "Shared Costs" in order to pay for the maintenance and operation of specifically defined "Shared Components" of the condominium and the amenities within the hotel.

5.     Q CLUB is in turn required to maintain financial records accounting for the elements making up the Shared Costs and roster indicating unit owners and their applicable charges. Q CLUB is also obligated to receive and accept reimbursement from unit owners for Shared Costs, but only as specifically identified and defined in the declaration of condominium.

6.     However, this has regularly not been the case.  At all times material to this action, Q CLUB has systematically failed to maintain the records it is obligated to maintain, and Q CLUB has routinely and systematically collected payments from Plaintiff and Class Members for items that either are not Shared Costs, collected payments for alleged Shared Costs incurred in prior years or are providing services which are Shared Costs under the declaration and billing them as Hotel Services.

7.     Accordingly, on behalf of themselves and others similarly situated, as a matter of common concern to the condominium's unit owners, Plaintiff now seeks a declaration of the Parties' rights and obligations under the declaration; an injunction; and damages from Q CLUB attributable to the unlawful charges Q CLUB has imposed in material breach of the condominium declaration (attached as **Exhibit A**) governing the Q Club Resort and Residence Condominium.

## PARTIES, JURISDICTION AND VENUE

8.     This Court has jurisdiction over the complaint pursuant to 28 U.S.C. § 1332(d), because in the aggregate, the matter in controversy exceeds the sum or value of $5,000,000, and

diversity of citizenship between the proposed Class Members and Defendant.

9.     Venue is proper in this Court because Defendant's principal places of business are located in this district and division and the causes of action accrued in this district and division.

10.     Plaintiff, GARY DEAR ("DEAR) is an individual Florida Citizen residing in Palm Beach County, Florida, and is otherwise *sui juris*. DEAR owns Unit 1402 at Q Club Resort. DEAR is a Class Member who has paid Q Club for Shared Costs as well as the recently imposed Housekeeping Services as defined in this action.

11.     Defendant, Q CLUB HOTEL, LLC ("Q CLUB") is a Delaware Limited Liability Company; maintains a principal address in Miami-Dade County, Florida; and has registered with the Florida Secretary of State, Division of Corporations, to conduct business in Florida.   Q CLUB is a Florida and Delaware citizen.

12.     All conditions precedent and necessary to bring this action have either been performed, have occurred, have been waived, or have otherwise been excused.

## FACTS APPLICABLE TO ALL COUNTS

13.     The Q Club Resort and Residence Condominium ("CONDOMINIUM") is located on Ft. Lauderdale beach in Broward County, Florida. It was established on or about February 2007. The CONDOMINIUM part of a condo/hotel arrangement consisting of three hundred thirty-three (333) residential units ("Residential Units"), six (6) commercial units, and one (1) hotel unit ("Hotel Unit").

14.     Defendant, Q CLUB, is the owner of the Hotel Unit.  Q CLUB markets, manages, and operates the Hotel Unit as the "Hilton Fort Lauderdale Beach Resort" under an exclusive licensing agreement with the Hilton Hotels Corporation.

15.     Plaintiff and Class Members own Residential Units in the CONDOMINIUM.

16.    The CONDOMINIUM is governed by a uniform declaration of condominium including several exhibits ("Declaration" attached as **Exhibit "A"**) whose standardized terms apply to each Plaintiff and Class Member similarly. Q CLUB is also bound to follow the terms of the Declaration, and under its standardized terms, Q CLUB's duties apply to Residential Unit Owners, including Plaintiff and Class Members, similarly.

17.    Unlike a traditional hotel with central ownership and management, the 333 Residential Units connected with the Hotel Unit are actually each individually owned condominium units subject to rental by guests enjoying the amenities of the Hotel Unit.

18.    As part of this condo/hotel arrangement, Q Club runs the Hotel Unit as a traditional resort hotel.

19.    Each Residential Unit owner may participate in Q CLUB's rental management program (the "RMP") owned and operated by Q CLUB. Alternatively, each Residential Unit owner has the right to rent and manage his or her Residential Unit(s) individually or through a separate management company.

20.    Because the Residential Units are to be used for transient and/or hotel rentals, the rental of Residential Units is not subject to the approval of the CONDOMINIUM's association or of Q CLUB, and is not subject to any other limitations unless set forth in the Declaration. *See* Declaration §16.7.

**The "Shared Components"**

21.    The CONDOMINIUM was established in a manner that enables guests to enjoy both common elements of the CONDOMINIUM and the amenities within the Hotel Unit described as "Shared Components."  See Declaration 2.13(d).

22.     The Shared Components include specified structural components and improvements, excluding the individual residential and commercial units.  The Shared Components include the main hotel lobby and front desk, elevators, pool, recreation deck, fitness center, parking garage, and the balconies affixed to each Residential Unit.  *See* Declaration § 2.34.

23.     The rights of Residential Unit owners to use the Shared Components are subject to the limitations set forth in § 3.5(e) of the Declaration and the obligations for payment of the assessments and charges set forth in § 12 of the Declaration.  However, "in no event shall an owner be denied access to and from the Owner's Unit."  *See* Declaration §16.1.

24.     Because Residential Unit owners, their guests, tenants and invitees cannot access their units without using some Shared Components (such as traversing the lobby and using the elevator), each unit owner is granted an easement of support and of necessity by the Declaration. Stated differently, the Shared Components owned by Q CLUB are subject to an easement of support and of necessity in favor of the 333 Residential Unit owners and six Commercial Unit owners.  *See* Declaration § 3.5(a).

25.     Additionally, each Residential Unit owner, and his or her guests, tenants and invitees, has an easement for ingress and egress and for the use and enjoyment of the Shared Components. See Declaration § 3.5(e).

**The "Shared Costs"**

26.     The Hotel Unit includes some Shared Components with the Residential Unit Owners, and the Declaration obligates Residential Unit Owners to reimburse Q CLUB for "Shared Costs" relating to those Shared Components as those costs are defined in the Declaration.

27.     The Declaration sets forth the obligation of each Residential Unit owner and each commercial unit owner to reimburse Q CLUB as the Hotel Unit for certain costs—"Shared

Costs"—"incurred by the Hotel Unit Owner in (or reasonably allocated to) the repair, replacement, improvement, maintenance, management, operation, ad valorem tax obligations, and insurance of the Shared Components." *See* Declaration, § 12.1.

28.    The Shared Costs are in addition to fees assessed by the CONDOMINIUM's association.  *See* Declaration, §§ 2.35, 12.1.

29.    Under the Declaration, the Shared Costs are assessed against each of the 333 Residential Units on a percentage basis annually according to each Residential Unit's "proportionate share" of Q CLUB's Shared Costs according to the terms of the Declaration and its exhibits. To this end, § 12.3 (a) of the Declaration sets forth that each owner of a Residential Unit, including Plaintiff and Class Members, "shall be deemed to covenant and agree to pay the Hotel Unit Owner annual charges for the operation and insurance of, and for payment of 40.4967% of the Shared Costs (the "Non-Hotel Units Allocated Share")." Also, "each Residential and Commercial Unit Owner shall be charged a 'proportionate share' of the Hotel Shared Costs.

30.    The proportionate share for each Residential and Commercial Unit is set forth more specifically on Exhibit "7" to the Declaration." *See* Declaration, §12.3. Exhibit 7 to the Declaration contains a table specifying, among other things, the "Unit Number" and that Unit's "Allocated Share of Shared Costs." *Id*.

31.    Section 12.7 of the Declaration, states that the "Hotel Unit Owner shall maintain financial books and records showing its actual receipts and expenditures with respect to the maintenance, operation, repair, replacement, alteration and insurance of the Shared Components, including the then current budget and any then proposed budget (the "Shared Component

Records").” The Shared Component Records shall at all times, during reasonable business hours, be subject to the inspection of any Member of the Association.”

**Facts Relating to Named Plaintiff _DEAR_**

32.   DEAR purchased Residential Unit 1402 in the CONDOMINIUM on or about December 18, 2006.

33.   Since that time, DEAR has regularly paid fees assessed by the CONDOMINIUM's association and otherwise complied with his or her obligations under the Declaration.

34.   Since that time, Q CLUB routinely requested payments from DEAR for purported Shared Costs.

35.   Since becoming the owner of the Residential Unit, DEAR has also regularly paid requests for reimbursement or payment from Q CLUB for purported Shared Costs as set forth in the Declaration. At no time did Q CLUB indicate that it was requesting Shared Costs payments from DEAR that were not covered under the Declaration.

36.   Since September 1, 2017, DEAR has regularly paid Housekeeping Services fees assessed by Defendant Q Club after Q Club abandoned its prior position that all in-room cleaning, laundry, linens and other housekeeping costs were mandatory Shared Costs under the Declaration.

**Plaintiff and Class Members have Suffered Common Injuries**

37.   The Declaration contains preprinted, uniform, and standardized terms and conditions that have applied to each Class Member, including each Plaintiff.

38.   The Declaration is essentially a contract and covenant that runs with the land that binds Q CLUB, Plaintiff, and Class Members.

39.    Q CLUB has entered into the same covenant and agreements stated in the Declaration with all of the Residential Unit Owners at the Q Club Resort.

40.    At all times material to this action, Q CLUB was obligated to comply with the terms and conditions of the Declaration, which are material to and would be material to any person owning a Residential Unit including to request payment for and collect from Plaintiff and Class Members annual charges for their allocated shares of Shared Costs as defined in the Declaration.

41.    At all times material to this action, based on requests for those payments from Q CLUB, Plaintiff and Class Members as Residential Unit owners have regularly paid their percentages of purported Shared Costs to Q CLUB.

**Prior Case**

42.    On February 18, 2015, plaintiff filed the predecessor class-action lawsuit in Broward County Circuit Court.  *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-002802 Div. 12.

43.    On March 9, 2015, this defendant filed its Notice of Removal initiating case number 15-60474-CIV-COHN/SELTZER. *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN ECF No. 1. (Hereinafter **Dear 1**)

44.    The case was tried to a jury on May 25, May 26, May 30, May 31, and June 1, 2017. *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN ECF Nos. 113, 114, 117, 120, 121.

## RETROACTIVE CHARGES

45.    During trial the Court entered its Order finding that the Declaration does not permit retroactive charging for costs incurred in prior years. *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN ECF No. 119.

46.     On June 23, 2017, the Court entered its Final Judgment in the amount of $1,274,101 on the retroactive charge claim. *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN ECF No. 153.

47.     The June 23, 2017, judgment was entered for the back-charging which Q Club had done from January 1, 2013 until the Complaint was filed on February 18, 2015.  That Judgment did not address the back-charging which occurred from February 19, 2015 through trial or continuing.

48.     Despite the clear prohibition of retroactive charging for Shared Costs in prior years pursuant to Declaration provisions 12.3(b) and 12.4 as recognized and Ordered by Judge Cohn, defendant Q Club has not returned the prohibited back-charges which it collected after **Dear 1** was filed on February 18, 2015, and defendant presently continues to collect the prohibited back-charges.

### ROOMS CHARGES AS SHARED COSTS

49.     During trial before Judge Cohn, defendant took the position that all costs of the overall operation the hotel are Shared Costs. Q Club argued that in-room housekeeping, cleaning, laundry, linens and operation of the hotel room units was a part of Shared Costs. On this point, Q Club won.

50.     At the trial, counsel for Defendant Q Club made clear in his opening statement that "Shared Costs [was] the fundamental issue" and that "everything in the condo hotel is a Shared Component" save for a "few areas … [including] … food and beverage." *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN, Trial Transcript May 25, 2017, pgs. 116, 118.

51.     Witnesses for Defendant Q Club testified that the inside of the rooms, including housekeeping and linen cleaning, was considered Shared Components, to be maintained through

9

Shared Costs. Specifically, Barry Mukamal, CPA, an expert for Q Club, testified that the Shared Costs included expenses incurred in managing or maintaining the Shared Components of the hotel, including "the maintenance and management of the entire property, including the inside of the units." *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN, Jury Trial, May 30, 2017, Testimony of Barry Mukamal, CPA, pg. 35.

52.   On behalf of Q Club, Mr. Mukamal further testified that the maintenance, management, and operation of the inside of the residential unit is a shared component because it relates to the operation of the hotel, which is the rental of units. Id. at 33-34. Indeed, Mr. Mukamal also testified that because the Hotel is an integrated project, Q Club cleaning the units was necessary as a Shared Cost in order to maintain the revenues of the hotel. Id. at pgs. 103, 118.

53.   As explained by another of Defendant Q Club's witnesses Sergio Pagliery, Esq., the attorney for the principal of Defendant Q Club, Shared Costs include all costs incurred for the overall property, excluding costs incurred either, 1) solely for the benefit of the hotel, for example, food and beverage and spa, or, 2) by unit owners pursuant to their respective unit management agreements. *Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN, Jury Trial, May 31, 2017, Testimony of Sergio Pagliery, Esq., pgs. 26-27.

54.   During his closing argument, counsel for Defendant Q Club again reiterated that housekeeping and linen services was an authorized Shared Cost:

> Did Plaintiff…prove by a preponderance of the evidence, that Defendant Q Club
> Hotel breached the declaration by collecting as Shared Costs expenses, charges,
> and costs that were not authorized? Well, it's not the parking. We know that's
> authorized. It's not the housekeeping. We know that's authorized.

*Gary Dear v. Q Club Hotel, LLC*, Case No. 15-60474-CIV-COHN, Jury Trial, June 1, 2017, pg. 146.

55.   Despite its unwavering position that the housekeeping, linens, laundry, cleaning and operation of the inside of the rooms are properly charged as Shared Costs under the Declaration taken throughout the 2015 Class action case, beginning on September 1, 2017, Defendant Q Club abandoned the position it had prevailed on at trial, and began separately charging the residential unit owners fees for Housekeeping Services including cleaning, laundry, linens, and the operation of the inside of hotel rooms.

56.   The first notice the hotel room owners received of Q Club's unilateral change of the housekeeping of the rooms from a Shared Cost mandated under the Declaration to an optional fee for service, was by a letter entitled Notice Regarding Unit Housekeeping Service dated August 1, 2017. Attached as **Exhibit B**.

57.   Beginning in September 2017 and continuing, Q Club has charged and collected a separate fee for Housekeeping Services, while providing no additional services above those it previously collected and defended as mandatory Shared Costs under the Declaration.

58.   Between the end of the trial on June 1, 2017 and the abandonment of Q Club's position that housekeeping and all in-room services were Declaration-mandated Shared Costs, there was no amendment to or alteration of the Declaration. The Declaration has not changed, just Q Club's application of it.

59.   Without any change to the operative Declaration, beginning on September 1, 2017, Defendant Q Club began charging fees for providing the housekeeping services in the rooms of the class members.

## JUDICIAL ESTOPPEL

60.    The trial before Judge Cohn resulting in the jury verdict on June 1, 2017 was the culmination of an ongoing effort to expand the charges Defendant could characterize as Shared Costs, and therefore bill 40.4967% of those costs to the class members.

61.    At trial Defendant marshaled defendant witnesses, defense experts, and argued to the court and jury that the in-room cleaning, laundry, linens, and other upkeep was a mandatory Shared Cost under the Declaration which it asserted was mandated by the Declaration to be shared by all residential unit owners.

62.    The defendant's presentation of those arguments, evidence, and testimony were designed to lead the Court and the jury into an interpretation and determination of what costs were mandatory Shared Costs under the Declaration.

63.    Prevailing on that issue saved the Defendant from having a verdict entered against it for millions of dollars if there were a finding that years of charging of those costs as Shared Costs were inappropriate. Testimony of Barry Mukamal May 30, 2017 at 122 and 124-126.

64.    Now that Q Club is abandoning its prior position that the in-room cleaning, laundry, linens and other housekeeping expenses are Shared Costs, that portion of the June 1, 2017, verdict should be set-aside and Judgment entered in favor of the Class Members for the full amount of all of those charges billed and paid from January 1, 2013 through the filing of this lawsuit.

65.    During **Dear 1**, Q CLUB advocated the propriety of billing and collecting from Residential Unit Owners, including Plaintiff and Class Members, monies for expenses that included cleaning, supplies, laundry, maid services, other in-room services for the inside of the privately-owned hotel room units.

12

66.     By engaging in the foregoing course of conduct, Q CLUB has caused Residential Unit Owners, including Plaintiff and Class Members, to be aggrieved and suffer ascertainable losses and damage.

67.     Q CLUB's course of conduct set out above is on-going and adverse to the public interest. Unless enjoined and restrained by an order of this Court, Q CLUB will continue to engage in the unlawful acts and practices set out herein. Such acts and conduct by Q CLUB has caused ascertainable loss and actual damage to Residential Unit Owners, including Plaintiff and Class Members, and unless enjoined by the Court, Q CLUB will continue to aggrieve and cause monetary and use losses to Plaintiff, Class Members, and future Residential Unit Owners.

## CLASS REPRESENTATION ALLEGATIONS

68.     Plaintiff brings this action as a class action pursuant to Rules 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure. The "Classes" or groups of "Class Members" Plaintiff seeks to certify are defined as follows:

**a.  Shared Cost Class**

Residential Unit Owners who paid Q Club retroactively charged Shared Costs that were charged on or after February 19, 2015.

**b.  Housekeeping Services Class**

Residential Unit Owners who paid Q Club in-room Housekeeping Services that were charged on or after September 21, 2017.

69.     Excluded from the Class are Defendant, any subsidiary or affiliate of the Defendant, and the directors, officers and employees of Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

70.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable

71.     **Numerosity**: The proposed Classes consist of at least 333 owners of Residential Units at the Q Club Resort and Residence Condominium. Plaintiff believes that this Class is so numerous such that joinder of all Class Members is impracticable and the disposition of their claims in a class action rather than individual actions will benefit the Parties and the Court. Class Members can be notified of this class action via notice publication and U.S. mail, at addresses that Defendant has in its business records.

72.     **Commonality and Predominance**: Common questions of law *or* fact exist as to Class Members and predominate over any questions solely affecting individual members of the Class. Among the predominant questions of law or fact common to Class Members are:

        a.     Whether Defendant participated in and pursued the common course of conduct complained of herein;

        b.     Whether Defendant is judicially estopped from abandoning its position that in-room cleaning, linens and other housekeeping services are mandatory Shared Costs under the Declaration;

        c.     Whether Defendant has billed and/or collected from Class Members annual charges for items included within the Declaration's definition of Shared Costs, on a retroactive basis;

        d.     Whether Defendant has billed and collected from Class Members charges for Housekeeping Services which it had previously asserted were mandatory Shared Costs as defined in the Declaration;

14

e.    Whether Class Members have sustained damages and, if so, the proper measure thereof; and

f.    Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief.

73.    **Typicality**: Plaintiff's claim is typical of those of the other Class Members because Plaintiff has no interest that is adverse to the interests of other Class Members; and Plaintiff, like all other Class Members, are or have been Residential Unit Owners; and were affected by the same ongoing and illegal conduct by Defendant through its systematically charging and collecting payments for Housekeeping Services which are Shared Costs; or perpetuating a fraud upon the Court by claiming the in-room cleaning, laundry and other housekeeping expenses were Shared Costs throughout the **Dear 1** case in order to avoid judgment for improperly charging them as Shared Costs, only to abandon that position as soon as the trial was over;   and improperly collecting Shared Costs retroactively for prior years.

74.    **Adequacy of Representation**: Plaintiff will fairly and adequately protect the interests of Class Members because it is in his best interests to prosecute the claims alleged herein to obtain full redress due them for the illegal conduct of which he complains.  Plaintiff has retained counsel experienced in litigating complex class actions.  Plaintiff has no interests that conflict with Class Members because questions of law or fact regarding Defendant's liability are common to all Class Members, to the extent that by prevailing on his own claims, Plaintiff necessarily will establish Defendant's liability to all Class Members.  Plaintiff's counsel has the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and his counsel are aware of their fiduciary responsibilities to the Class Members and are determined to

diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

75.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because:

a.   Joinder of all Class Members is impracticable;

b.   The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Member's rights and the disposition of their interests through actions to which they were not parties;

c.   Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender;

d.   Absent a class action, Class Members will continue to suffer losses and be aggrieved, and Defendant will continue to violate Florida law without remedy;

e.   Class treatment of this action will cause an orderly and expeditious administration of class claims, economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured;

f.   Plaintiff and its counsel are unaware of any class action brought against any Defendant for the violations alleged in this action;

g.   The forum is desirable because the Condominium Hotel is situated in this District and Defendant conducts its business here; and,

h.   This action presents no difficulty that would impede its management by the Court as a class action.

*Class-Wide Injunction and Declaration*

76.    Plaintiff seeks injunctive and declaratory relief on behalf of Class Members on grounds generally applicable to the entire Class Members in order to enjoin and prevent Defendant Q Club from continuing to breach the Declaration with Plaintiff and Class Members and to declare their collective rights under those agreements.

77.    Because Plaintiff seeks injunctive and declaratory relief for Class Members, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the Defendant. Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

78.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

79.    All conditions precedent to the filing of this action, if any, have been performed, waived, satisfied or otherwise executed.

## COUNT I
## DECLARATORY JUDGMENT

Plaintiff incorporates and realleges all allegations contained in paragraphs 1 – 79 as though fully set forth herein.

80.    This is an action pursuant to 28 U.S.C. § 2201(a) for a declaratory judgment and supplemental relief against Defendant Q Club.

81.    Q Club has stated that it has the unilateral right to recharacterize in-room cleaning, laundry, linens and other housekeeping costs from the mandatory Shared Costs under the

Declaration which it advocated in **Dear 1**, to Housekeeping Services for a fee which it instituted beginning on September 1, 2017.

82.    Q Club is judicially estopped from taking a position which is diametrically opposed to the position it took and prevailed on in **Dear 1**.

83.    Q Club is required to provide in-room cleaning, laundry, linens and other housekeeping unless and until the determination it sought that those expenses are Shared Costs as mandated under the Declaration are reversed on appeal.

84.    Further, if the subject Declaration is interpreted in a way that allows Q Club to unilaterally change those charges from Shared Costs to a Housekeeping Service for a fee, this court should use its equitable power to set aside that portion of the verdict in **Dear 1** which found those charges were properly Shared Costs and enter judgment in favor of the class for those costs charged as Shared Costs for the period of January 1, 2013, through the filing of this lawsuit.

85.    The parties do not agree regarding the appropriate interpretation and application of the Declaration and the judgment entered in **Dear 1**.

86.    Plaintiffs and Class Members are in doubt as to their rights and privileges with respect to the Declaration and Dear 1 judgment, and are entitled to have such doubt removed.

87.    There is a bona fide, actual, present, and practical need for a declaration of the rights of the parties with respect to the Declaration, as described above.

WHEREFORE, Plaintiff requests that the Court enter a declaratory judgment as to the parties' respective rights and obligations regarding the Declaration and award such other and further relief as it deems appropriate.

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT**</u>

Plaintiff incorporates and realleges all allegations contained in paragraphs 1 – 79 as though fully set forth herein.

88.    Under the terms of the subject Declaration, Q Club owes Plaintiff and Class Members the full amount of all Housekeeping Services charges collected.

89.    Under the terms of the subject Declaration, Q Club owes Plaintiff and Class Members the full amount of all retroactive Shared Costs charged and collected from February 19, 2015 through the filing of this lawsuit.

90.    Plaintiff and Class Members have performed their obligations required by law under the subject Declaration.

91.    As a direct and proximate result of Defendant's breach of the Declaration by charging in-room cleaning, linens, laundry and housekeeping as Housekeeping Services fee, and by illegally retroactively collecting for Shared Costs incurred in prior years Plaintiff and Class Members have been damaged.

<u>**COUNT III**</u>
<u>**INJUNCTIVE RELIEF**</u>

Plaintiff incorporates and realleges all allegations contained in paragraphs 1 – 79 as though fully set forth herein.

92.    Count III is brought on behalf of Plaintiff and Class Members under Rule 23(b)(3).

93.    Plaintiff and Class Members have a legal right under the Declaration and Defendant possess no legal rights to collect or attempt to collect a Housekeeping Services fee in the place of the Shared Costs which it previously asserted were mandated under the binding Declaration.

94.     Defendant Q Club has failed and refused to stop charging the Housekeeping Services fee to Plaintiff or Class Members, or alternatively to refund them the same expenses previously collected from them as Shared Costs.

95.     Likewise, Defendant Q Club has continued to collect and seeks to collect ongoing Housekeeping Services fees from Plaintiff and Class Members.

96.     Additionally, Defendant Q Club has continued to collect and seek to collect ongoing Retroactive back-charges of Shared Costs from Plaintiff and Class Members.

97.     As a consequence, Defendant Q Club has violated and continues to violate one or more cognizable legal rights of Plaintiff and Class Members.

98.     Defendant Q Club continues to retain monies due and owing Plaintiff and Class Members, including retroactive Shared Costs charges collected after February 18, 2015, which it continued and continues to collect even after that procedure was proscribed by the Order of June 1, 2017, and Housekeeping Services fees collected since September 1, 2017, or the costs of in room cleaning, laundry, linens and other housekeeping improperly charged as Shared Costs, and unless enjoined by this Court will continue to retain such monies.

99.     Plaintiff and Class Members have no adequate remedy at law by virtue of Defendant's on-going course of conduct.

100.    Irreparable injury will be suffered unless an injunction issues to prevent Defendant Q Club from continuing to retroactively charge and collect Shared Costs charges after February 18, 2015, which it continued and continues to collect even after that procedure was proscribed by the Order of June 1, 2017, and Housekeeping Services fees collected since September 1, 2017, or the costs of in-room cleaning, laundry, linens and other housekeeping improperly charged as Shared Costs and to provide notice to Class Members about their rights.

101.  Any potential injury to Defendant attributable to an injunction along the lines set forth in the preceding paragraph is outweighed by the injury that Plaintiff and Class Members will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of himself and Class members, respectfully request this Court enter a judgment against Defendant Q Club and in favor of Plaintiff, and grant the following relief:

(A)    Certification of the Class alleged above pursuant to Rule 23 (b) (3) and Rule 23(b) (2) of the Federal Rules of Civil Procedure, certifying Plaintiff as representatives of the Class and designating their counsel as counsel for the Class;

(B)    Creation of a common fund of actual damages to be paid to Plaintiff and all Class Members alleged above for Defendant's breach of contract;

(C)    An order enjoining Defendant Q Club from continuing its respective illegal conduct;

(D)    Pre-judgment and post-judgment interest;

(E)    An order awarding Plaintiff and class members reasonable attorneys' fees, pursuant to Florida Statute §57.105(7) or otherwise based in law or equity, and costs of suit, including expert witness fees; and

(F)    Such other and further relief as the Court may deem necessary or appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 31, 2018.                    Respectfully submitted,

*/s/ Matthew D. Weissing*
Matthew D. Weissing (FBN 559792)
E-mail: matt@epllc.com
EDWARDS POTTINGER, LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Robert A. Sweetapple (FBN 0296988)
E-mail: pleadings@sweetapplelaw.com
SWEETAPPLE, BROEKER & VARKAS, PL
4800 North Federal Highway
Boca Raton, Florida 33431-5188
Telephone:  561-392-1230

*Attorneys for Plaintiff*